IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DIVISIONX, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 1:16-cv-00697 |
| | § | |
| CUTTING EDGE GAMER, LLC | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S PETITION TO CONFIRM THE ARBITRATOR'S AWARD
IN FAVOR OF PLAINTIFF, VACATE THE ARBITRATOR'S AWARD AND
FINDING IN FAVOR OF DEFENDANT, AND OFFSET ANY REMAINING AWARDS**

Plaintiff DivisionX, Inc. ("DivisionX" or "Plaintiff") files this Petition to Confirm the Arbitrator's Award in Favor of Plaintiff, Vacate the Arbitrator's Award and Finding in Favor of Defendant, and Offset Any Remaining Awards ("DivisionX's Motion"), and alleges as follows:

### I. INTRODUCTION

DivisionX respectfully moves this Court for the following relief:

- Confirm the Arbitrator's Award in favor of DivisionX on its claim for breach of the Software License Agreement ("SLA");

- Vacate the Arbitrator's finding that Defendant did not infringe DivisionX's copyrights, and render judgment in DivisionX's favor on this issue;

- Vacate the Arbitrator's Award in favor of Defendant for violations of the Texas Deceptive Trade Practices Act ("DTPA") § 17.46(b), and render judgment in DivisionX's favor on this issue; and

- Offset any remaining awards between DivisionX and Defendant.

### II. APPLICABLE LAW

DivisionX's motion is governed by the terms of the Texas Arbitration Act ("TAA"). The underlying arbitration proceeding was conducted in accordance with the arbitration provision in the SLA, which states that the agreement will be "governed by and construed and interpreted in

1

accordance with the laws of the State of Texas." Affidavit of Gary Sorden ("Affidavit," attached as Ex. A), Ex. 1.[1] The arbitration provision also states that "[j]udgment on any award rendered by the Arbitrator may be entered in any Court of competent jurisdiction." *Id.* at § 12.

### A.   Confirmation Standard

Under the TAA, a trial court should confirm an arbitration award absent circumstances for vacating, modifying, or correcting the award. Tex. Civ. Prac. & Rem. Code Ann. § 171.087; *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 245 (Tex. 2002).

### B.   Vacatur Standard

Among other circumstances, an arbitration award may be vacated if the award displays manifest disregard of the law or if the arbitrator exceeds the scope of her authority. *Home Owners Mgmt Enters., Inc. v. Dean*, 230 S.W.3d 766, 768 (Tex. App.—Dallas 2007, no pet.); Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A). Manifest disregard requires showing that the arbitrator recognized the applicable law but chose to ignore it. *Id.* at 768-69.

Further, a court may vacate portions of the Arbitrator's Award where the vacated portions "are so distinct and independent that the valid part will truly express the judgment of the arbitrator." *City of Waco v. Kelley*, 309 S.W.3d 536, 551 (Tex. 2010). *See also Jones v. Brelsford*, 390 S.W.3d 486, 494 (Tex. App.—Houston [1st Dist.] 2012, no pet).

As explained below, the Arbitrator's finding that Defendant did not infringe DivisionX's copyrights and its Award in favor of Defendant under § 17.46(b) of the DTPA both displayed a manifest disregard for the law.

---

[1] Exhibits 1-32 referenced herein are attached to Mr. Sorden's Affidavit. Ex. A. For clarity, DivisionX will simply refer to Exhibits 1-32 by their respective numbers and without reference

**C.     Offsetting Awards**

Under Texas law, "[t]here is no doubt of the power of courts independent of statute to set off mutual judgments against each other." *Wood v. Penntex Res. LP*, No. CIV.A. H-06-2198, 2008 WL 2609319, at *11-12 (S.D. Tex. June 27, 2008) (quoting *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex.1995)). "[S]etoff is an appropriate judicial response to the serious practical difficulties encountered when parties have mutual judgments." *Id.* (internal citations omitted). "The right to offset two final judgments is independent of the merits of either of the underlying judgments." *Id.* (internal citations omitted).

Courts can offset awards in a single judgment. *See Am. Network Leasing Corp. v. Corporate Funding Houston, Inc.*, No. 01-00-00789-CV, 2002 WL 31266230, at *14 (Tex.App.-Houston [1 Dist.] Oct. 10, 2002, pet. Dism'd). Further, "Courts have held that offsetting monetary awards made in the same arbitration proceeding does not amount to a substantive modification provided that an offset is consistent with the award." *Wood*, 2008 WL 2609319 at *11-12 (citing *Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, (5th Cir.1994). For example, in *National Risk Underwriters, Inc. v. Occidental Fire & Cas. Co. of North Carolina*, "the court confirmed an arbitration award, offset the amounts owed by the parties under mutual awards, and entered a judgment in favor of one party for the net amount." *Id.* (citing *National Risk Underwriters, Inc. v. Occidental Fire & Cas. Co. of North Carolina*, 931 F.2d 1015, 1016 (4th Cir. 1991)).

Here, regardless of the Court's ultimate determination on DivisionX's motion to vacate, the Court should offset the final awards as confirmed.

### III.   PARTIES

DivisionX, claimant in the arbitration proceeding under review, is a Texas corporation with its principal place of business located at 805 Falcon Lane, Leander Texas, 78728.

Defendant Cutting Edge Gamer, LLC ("CEG"), defendant in the arbitration proceeding under review, is a Texas limited liability corporation with its principal place of business located at 3906 N. Lamar Blvd., Suite 201, Austin Texas, 78756.

### IV.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

Venue in this action lies within this judicial district pursuant to 28 U.S.C. § 1391 because the underlying arbitration proceeding was conducted in Austin, Texas, and the parties agreed that "[j]udgment on any award rendered by the Arbitrator may be entered in any Court of competent jurisdiction." Ex. 1 at § 12.

### V.   BACKGROUND

**A.   Factual Background**

DivisionX and Defendant entered into a contract for rental of software created by DivisionX in May 2010. Ex. 1. The contract provided that Defendant had no rights, title or interest in the code developed by DivisionX and rented by Defendant. *Id.* at § 6. In addition, Defendant could not "modify, translate, reverse engineer, decompile or create a derivative works based upon the Software or Data." *Id.* at § 2.B. Defendant acknowledged by signing the contract that the software and other data provided by DivisionX constituted "valuable confidential information that is proprietary to Licensor." *Id.* at § 7.A. Further, Defendant's non-exclusive

4

license to DivisionX's software was only for the execution of DivisionX's software on DivisionX's application server. *Id.* at § 1.

Defendant rented the shopping cart and mailing list software, which was part of the "The CEG Web Platform." This included Defendant's customer-facing software, restricted access to proprietary shopping cart, and mailing list software from July 2010 through September 2015. DivisionX discovered in December 2014 that Defendant improperly accessed its servers and took the source code of the proprietary shopping cart and mailing list software that was used by DivisionX to implement the CEG Web Platform and additional unrelated platforms for DivisionX's other customers. Defendant terminated the contract between the parties on July 21, 2015. Ex. 8. Defendant admits that it took the source code on or about November 2014, but failed to admit that in fact other DivisionX code had been taken as early as July 2014. *See* Ex. 6 and p. 4. Defendant was prohibited from copying the code or improperly accessing DivisionX's server via the contract. Ex. 1 at §§ 6, 2.B, and 7.A

After the source code was taken by Defendant, Defendant admittedly began hosting the proprietary DivisionX software elsewhere. *See* Ex. 6 and p. 4. The contract and the intellectual property rights of DivisionX also barred Defendant's actions.

In addition, the relationship between the parties was also subject to DivisionX's Terms of Business. Ex. 9. The final proposal between the parties and provided to Defendant mandated that any services provided by DivisionX were governed by the contract between the parties (Software License Agreement) as well as the Terms of Business. Ex. 9, p. 2; Ex. 10. Pursuant to DivisionX's Terms of Business, Defendant was prohibited from:

- Using DivisionX's server in violation of any law or regulation. Ex. 10 at 4.1(A);
- Acquiring any rights, title or interest in the technology provided by DivisionX. Ex. 10 at 10(D); and

- Using the provided technology for any purpose other than accessing and using the services. Ex. 10 at 10(D).

DivisionX at all times provided software in conformance with the contract between the parties, and the Arbitrator found that DivisionX did not breach the Software License Agreement. Ex. 2.

**B.   Proprietary Source Code Libraries**

DivisionX's proprietary source code libraries taken on or about July 2014 include the following Perl Module files and Database Designs located in the "/www/lib/" directory and subdirectories thereof on DivisionX's server (the "DivisionX Code"):[2]

- DXCart.pm
- DXUtils.pm
- CGIutil.pm
- DBIutil.pm
- GENutil.pm
- TPLutil.pm
- DXMailingList.pm
- CGIutil.pm
- DBIutil.pm
- GENutil.pm
- TPLutil.pm
- leasing.sql
- mailinglist.sql

On July 11, 2014, Defendant indisputably copied the DivisionX Code from "/www/lib/" to its webspace located in the "/var/www/vhosts/cuttingedgegamer.com/" directory on DivisionX's server. Ex. 12; Ex. 13; Ex. 14; Ex. 15; Ex. 8; Ex. 11, ¶¶ 12-23, 35-37. That same

---

[2] In the event the Court would like to review these proprietary source code libraries, DivisionX will submit copies of the source code upon entry of an appropriate protective order.

day, Defendant then indisputably copied the DivisionX Code off of DivisionX's servers and onto Mr. Black's computer and later onto VenturePilot's server. Ex. 12; Ex. 13; Ex. 14; Ex. 15; Ex. 16; Ex. 17; Ex. 18; Ex. 19; Ex. 8. Further, Defendant indisputably had to change parts of the DivisionX Code in order to get the copied DivisionX Code to operate. Ex. 11, ¶¶ 35-37; Ex. 18; Ex. 19.

C.   **E-Mail Correspondence**

The following e-mail correspondence, introduced into evidence at arbitration, illustrates the timeline of events around the time Defendant copied DivisionX's proprietary source code libraries:

- Email from Mr. Black to Mr. Walsh, Defendant's CEO, asking for a "deep look" at DivisionX's system (Ex. 20);
- Email from Mr. Black to Mr. Walsh on June 20, 2014, signing up Mr. Black to a paid position (Ex. 21);
- Email whereby Mr. Walsh gives Mr. Black the Plesk login to DivisionX's system without informing DivisionX (Ex. 22);
- Email from Mr. Black informing Defendant that the "entire site" is up and running on VenturePilot (Ex. 18);
- Email from Mr. Black to Defendant asking to "take over" for DivisionX and admitting again that he has "cloned the entire live app." (Ex. 19);
- Email from Mr. Walsh to Mr. Black sending over DivsionX's terms of use, SLA, and July 08, 2010 proposal and admitting Defendant is "renting" the software (Ex. 23);
- Email from Mr. Black telling Mr. Walsh "Glad you got DivX taken care of" (Ex. 24); and
- Email from Mr. Walsh to Defendant advisors claiming it wanted to move away from DivisionX's "custom php solution" and admitting that Mr. Black has replicated the system (Ex. 25).

D.   **Causes of Action**

At arbitration, DivisionX pursued the following causes of action:

- Breach of the Software License Agreement (Ex. 1)

7

- Breach of the Terms of Business (Ex. 9)
- Copyright Infringement of the Proprietary Source Code Libraries (listed above)
- Breach of Computer Security (Texas Civil Practice and Remedies Code § 143)

Defendant pursued the following causes of action:

- Breach of the Software License Agreement (Ex. 1)
- Texas Deceptive Trade Practices Act Claims

### E. Arbitrator's Award

On March 18, 2016, the Arbitrator awarded the following (the "Arbitrator's Award"):

- $3,110.96 to DivisionX for Defendant's breach of the Software License Agreement
- $144,539.20 to DivisionX in attorney's fees
- $2,159.63 to DivisionX in costs
- $3,900.00 to Defendant on its § 17.46(b) DTPA claim
- $105,459.20 to Defendant in attorney's fees
- $1,925 to Defendant in costs

The Arbitrator denied all other relief. Ex. 2.

## VI.   ARGUMENT

### A.   Vacatur of Finding of No Copyright Infringement

DivisionX moves this Court to vacate the Arbitrator's finding that Defendant did not infringe DivisionX's copyrights as this finding displays manifest disregard for the law. As explained below, the Arbitrator both knew of the substantive law of copyright and ignored that law in finding that Defendant did not infringe DivisionX's copyrights.

Copyright infringement is a strict liability offense. DivisionX was required to prove ownership of copyrighted material and copying by the Defendant in order to establish a case of copyright infringement. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.,* 878 F.2d 806, 810 (5th Cir.1989). To establish ownership, DivisionX had to show that its code was copyrightable

and that DivisionX complied with statutory requirements in securing the copyright. *Mason v. Montgomery Data, Inc.,* 765 F.Supp. 353, 355 (S.D.Tex.1991). To establish copying, DivisionX had to show that the DivisionX code was reproduced in computer memory without permission. *See Vault Corp. v. Quaid Software Ltd.,* 847 F.2d 255, 259 (5th Cir.1989).

In addition to copying, the creation of a derivative work without permission also violates copyright law. 17 U.S.C. §§ 106, 501. The Copyright Act defines "derivative work" as "a work based upon one or more preexisting works, [including any] form in which a work may be recast, transformed, or adapted." 17 U.S.C § 101. "A work consisting of editorial revisions, annotations, elaborations, **or other modifications** which, as a whole, represent an original work of authorship, is a 'derivative work'." *Id.*

The Arbitrator was fully aware of this law as DivisionX briefed the requirements of copyright law in its Closing Brief. Ex. 5 at pp. 10-11. Further, as demonstrated below, the Arbitrator clearly ignored this law as to DivisionX's copyright claim by rendering inconsistent findings.

### 1. **DivisionX indisputably owned the DivisionX Code.**

Defendants never disputed that DivisionX owned the copyrighted material at issue in this case. Ownership of a valid copyright consists of: (1) originality, (2) copyrightability, and (3) compliance with applicable statutory formalities. *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 682 (S.D. Tex. 2000). DivisionX introduced its copyright registration certificate from the Copyright Office, which serves as prima facie evidence of these elements. *Id.*; Ex. 5 at pp. 10-11; Ex. 26. In addition to serving as prima facie evidence of the above elements, this certificate also established DivisionX, Inc. as the copyright claimant. Further, Defendant never disputed that the DivisionX Code is copyrighted or that DivisionX owns those copyrights.

Additionally, DivisionX introduced source code at arbitration showing that the top of each copyrighted file prominently displays a copyright header substantially similar to the following:

```
!#########################################################################
# Copyright (c) 1998,2010 Dr. Ataollah Etemadi. All rights reserved.
#
# The use of this software or any derived work for commercial or on-commercial
# use without the written permission of the author is strictly prohibited.
#
# THIS SOFTWARE IS PROVIDED ``AS IS'' AND ANY EXPRESS OR IMPLIED
# WARRANTIES, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF
# MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED.
# IN NO EVENT SHALL THE AUTHOR OR CONTRIBUTORS BE LIABLE FOR ANY DIRECT,
# INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES
# (INCLUDING, BUT NOT LIMITED TO, PROCUREMENT OF SUBSTITUTE GOODS OR
# SERVICES; LOSS OF USE, DATA, OR PROFITS; OR BUSINESS INTERRUPTION)
# HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY, WHETHER IN CONTRACT,
# STRICT LIABILITY, OR TORT (INCLUDING NEGLIGENCE OR OTHERWISE) ARISING
# IN ANY WAY OUT OF THE USE OF THIS SOFTWARE, EVEN IF ADVISED OF THE
# POSSIBILITY OF SUCH DAMAGE.
#

package DXCart;
```

All of the DivisionX Code contained similar copyright headers. *See* Ex. 5 at pp. 11-12; Ex. 11 at Ex. A; note 2 above.

### 2. Defendant indisputably copied the DivisionX Code multiple times without DivisionX's permission.

As the evidence at arbitration conclusively demonstrated, Defendant copied the DivisionX Code multiple times, as well as modified that code, thereby creating derivative works. By copying the files out of the "/www/lib/" folder and into Defendant's webspace, Defendant violated DivisionX's copyrights. Ex. 11, ¶¶ 12-23, 35-37. Further, Defendant never disputed that it copied DivisionX's code in this manner. Defendant copied the files again when it transferred the files off of DivisionX's servers and onto Mr. Black's computer and later onto the VenturePilot hosting service. Ex. 12; Ex. 13; Ex. 14; Ex. 15; Ex. 16; Ex. 17; Ex. 27 pp. 17-20. Again, Defendant did not dispute that it copied DivisionX's code in this manner. Both of these actions indisputably constitute violations of DivisionX's Copyrights.

The only defense Defendant presented to DivisionX's claims of copyright infringement was that DivisionX consented to Defendant copying the DivisionX Code. Ex. 7 pp. 6-8. However, Defendant did not present any evidence that the SLA granted Defendant the right to

make copies or derivative works of the DivisionX Code or that DivisionX consented to such copying. Indeed, DivisionX wasn't aware that any code had been copied until December 2014, months after the infringement occurred. Further, as the Arbitrator found, Defendant in fact breached the SLA. Ex. 2.

The Arbitrator's finding that Defendant breached the SLA demonstrates that the Arbitrator understood that Defendant did not have permission to copy DivisionX's Code. Despite this, and despite her knowledge of the requirements of copyright law, the Arbitrator disregarded the law and found that Defendant did not infringe DivisionX's copyrights. This finding is wholly inconsistent with her finding that Defendant breached the SLA.

For the same reasons, a finding that 17 U.S.C. § 1201(f) permitted Defendant's copyright infringement would display manifest disregard for the law.  Section 1201(f) does not create a defense for Defendant where such "circumvention" would actually constitute copyright infringement. 17 U.S.C. § 1201(f). Indeed, copying copyrighted files without permission off of DivisonX's server is *per se* copyright infringement. Such acts of infringement are not protected by § 1201(f).

In addition, the SLA expressly stated that "[Defendant] may not modify, translate, reverse engineer, decompile, or create derivative works based upon the Software or Data" and that "[Defendant] agrees to use the Software and Data in a manner that complies with all applicable laws including intellectual property and copyright laws." Ex. 1, § 2(B). The SLA also made clear that "[t]itle to any proprietary rights in the Software or Database designs or [DivisionX]'s web site will remain and be the sole and exclusive property of [DivisionX]." Ex. 1, § 6.

The Arbitrator knew this law as Defendant quoted it in its closing brief, yet made a finding of no copyright infringement despite acknowledging that Defendant breached the SLA. Ex. 7 at p. 7. This inconsistent finding demonstrates a manifest disregard for the law.

### 3.    Damages

At arbitration, DivisionX sought its actual damages pursuant to 17 U.S.C § 504(a)(1) and (b), and its attorney's fees as permitted by § 505. As acknowledged by Defendant by signing the SLA, DivisionX's software and other data constituted "valuable confidential information that is proprietary to [DivisionX]." Ex. 1, § 7. As a result of Defendant's copyright infringement, DivisionX suffered actual damages in the amount of $43,568.46.[3] This amount reflects the "buy it now" price for the DivisionX Code as set forth in the July 8, 2010 Proposal. Ex. 10, PDF p. 2. This proposal offers the best estimate of the value of the DivisionX Code as it reflects DivisionX's asking price in an arms-length negotiation outside the context of litigation, and is based on DivisionX's 18 years of business experience.

By taking the Code, Defendant had all the benefits of ownership (for example, it could host the Code wherever it wanted to and could modify the Code freely) without having ever paid for those benefits. Defendant's copyright infringement deprived DivisionX of the sale it should have made if Defendant wanted the benefits of ownership.

For these reasons, DivisionX asks this Court to vacate the Arbitrator's finding that the Defendant did not infringe DivisionX's copyrights, and render judgment for DivisionX in this regard. DivisionX asks this Court to award it $43,568.46 for Defendant's infringement, as well as attorney's fees as provided in the arbitration award. In the event this Court finds that the Arbitrator's finding regarding copyright infringement should be vacated but does not believe it is

---

[3] The full calculations underlying this figure can be found in DivisionX's December 30, 2015, Amended Demand for Arbitration. Ex. 3, ¶ 15.

in a position to render judgment, DivisionX requests that this Court remand the issue of copyright infringement to the Arbitrator for further proceedings.

**B.    Vacatur of Finding of and Award for DTPA Violation**

DivisionX moves this Court to vacate the Arbitrator's finding that DivisionX violated § 17.46(b) of the Texas Deceptive Trade Practices Act and its award of damages and attorney's fees to Defendant.

The Arbitrator requested the closing statements be submitted via filings. Both parties complied with the Arbitrator's request. In its closing briefing, Defendant wholly failed to present any evidence to support a finding that DivisionX violated § 17.46(b). In this regard, Defendant alleged that DivisionX made "false representations." Ex. 7, p. 14. However, Defendant failed to offer any evidence of misrepresentation but generally averred that WordPress, a third-party software application, would not work correctly when combined with DivisionX's software leased by Defendant. Ex. 7 at p. 14.

Simply put, the Arbitrator exceeded her powers when she failed to acknowledge that Defendant lacks standing to bring a DTPA claim against DivisionX. To establish DTPA "consumer" status: "(1) a person must have sought or acquired, goods or services, by purchase or lease; and (2) **the goods or services, purchased or leased, must form the basis of the complaint**." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 614 (Tex.App.-Waco 2000) (emphasis added); *see also* Tex. Bus. & Com. Code § 17.45(4). In fact, under Texas law it is clear that "[i]n all cases, a plaintiff must qualify as a 'consumer' in order to have standing to bring an action under the DTPA." *Marketic v. U.S. Bank Nat'l Assoc.*, 436 F.Supp.2d 842, 855 (N.D.Tex.2006); *see also Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex.App.-San Antonio 1996) (finding that consumer standing is "an essential element of a DTPA cause of

action"). Standing to bring a DTPA action was a threshold decision for the Arbitrator. In this matter, Defendant did lease software from DivisionX, but as Defendant's closing brief demonstrates, its DTPA claim is solely derived from claims against WordPress software, which is third-party software and not software leased by CEG. In fact, the SLA describes the scope of the license to Defendant, which is only to "access" software developed by DivisionX on its "server." Ex. 1 at § 1. There is absolutely no allegation in Defendant's closing brief that software created by DivisionX had any issues whatsoever. As such, the software leased by Defendant does not form the "basis of the complaint" for Defendant's DTPA claim and as a result, Defendant has no standing to assert a DTPA claim. To be sure, even a breach of the SLA by DivisionX, which was not found by the Arbitrator, would not give rise to a claim under the DTPA. *See* Tex. Bus. & Comm. Code § 17.45 (2002) (West Supp. 2010). *See also Dura–Wood Treating Co. v. Century Forest Industries, Inc.*, 675 F.2d 745, 756 (5th Cir.1982); *Ashford Development Inc. v. USLife Real Estate Serv. Corp.*, 661 S.W.2d 933, 935 (Tex.1983); *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex.1998). The Arbitrator had a duty to make this threshold determination before finding on behalf of Defendant and failed to do so. The Arbitrator thus exceeded the scope of authority when she failed to acknowledge Defendant's lack of standing. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A).

While it is clear that Defendant has no standing for its DTPA claim, such a claim based upon WordPress is also deficient. WordPress is third-party software provided by hosting software used, but not developed by DivisionX and such third-party software is governed by DivisionX's Terms of Business. Ex. 9, § 5. Indeed, DivisionX's Terms of Business make clear that all services are "AS IS," and thus Defendant had no legal basis for its DTPA claims. Ex. 9, §§ 5, 11 and 12; *Prudential Ins. Co. of Am. v. Jefferson Associates*, Ltd., 896 S.W.2d 156, 163-

64 (Tex. 1995) ("as is" agreement is not a waiver of DTPA rights, "it is a statement that no basis exists for the assertion of such rights"). Defendant never disputed that DivisionX's Terms of Business contained this clause, and the Arbitrator was aware of preclusive effect of an "as is" clause on Defendant's DTPA claims because DivisionX specifically pointed this out in its Closing Brief. Ex. 5, p. 19.

Additionally, DivisionX's Terms of Business make clear that the customer installs third-party software (such as WordPress) at its own risk, and that DivisionX is not liable for "damages, including any general, special, incidental or consequential damages arising out of the use or inability to use the services including but not limited to . . . failure of your web sites to operate." Ex. 9, §§ 5, 11 and 12. Further, the WordPress license agreement makes clear that WordPress comes "AS IS" and that in no event will a redistributor of the program be liable for damages resulting from the use of or inability to use WordPress. Ex. 28, pp. 1, 11.

Defendant never disputed that it accepted the Terms of Business or that it had to review the WordPress license agreement before it installed WordPress via Plesk. Ex. 29; Ex. 30; Ex. 28, Ex. 31; Ex. 32. Further, Defendant never disputed the existence of any of these clauses at Arbitration.

Defendant does not and never did have standing to bring a DTPA claim because the software "leased" by Defendant was not the subject of its DTPA complaint. To establish DTPA "consumer" status: "(1) a person must have sought or acquired, goods or services, by purchase or lease; and (2) the goods or services, purchased or leased, must form the basis of the complaint." *Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 614 (Tex.App.-Waco 2000); *see also* Tex. Bus. & Com. Code § 17.45(4).

Further, the DTPA provides that suits under the chapter "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years

15

after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Tex. Bus. & Com. Code § 17.565. *See also KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex.1999); *Rodrigue v. Am. Towers, LLC*, No. 1-16-CV-064 RP, 2016 WL 2853574, at *2 (W.D. Tex. May 13, 2016). "Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011) (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004)). *See also KPMG*, 988 S.W.2d at 749 (holding that "accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury," not when the plaintiff knows "the specific nature of each wrongful act that may have caused the injury").

Here, Defendant entered into the SLA in May, 2010 and rented DivisionX's shopping cart and mailing list software through September 2015. Defendant did not claim to have any issues with WordPress until September 2014, four years after it entered into the SLA and first agreed to DivisionX's Terms of Business. In view of this, the Arbitrator exceeded her powers by entertaining Defendant's DTPA claim despite the fact that the statute of limitations period had run.

Because Defendant failed to introduce evidence to support its DTPA claim, and because DivisionX's Terms of Use specifically prevents a DTPA claim, the Arbitrator's finding in favor of Defendant (1) exceeded her powers in violation of the TAA, and (2) resulted in manifest disregard for the law. As such, DivisionX respectfully requests that this Court vacate the Arbitrator's finding that DivisionX violated § 17.46(b) of the Texas Deceptive Trade Practices Act, and vacate Defendant's monetary award in its entirety.

C. **Confirmation of Breach of SLA**

DivisionX requests that this Court confirm the Arbitrator's Award in DivisionX's favor that Defendant breached the Software License Agreement, including the Arbitrator's Award of $3,110.96 in damages, $144,539.20 in attorney's fees, and $2,159.63 in costs. Ex. 2. No grounds exist for vacating, correcting, or modifying this award. *CVN*, 95 S.W.3d at 245.

D. **Offsetting Awards**

After ruling on DivisionX's motion to vacate the Arbitrator's finding of no copyright infringement, DivisionX's motion to vacate the Arbitrator's Award to Defendant on its § 17.46(b) DTPA claim, and DivisionX's motion to confirm the Arbitrator's Award to DivisionX on its breach of contract claim, DivisionX requests that the Court offset any remaining awards held by DivisionX and Defendant against one another. *See Wood*, 2008 WL 2609319, at *11-12.

VII.   **PRAYER**

For these reasons, DivisionX respectfully requests that the Court (1) vacate the Arbitrator's finding of no copyright infringement and render judgment in DivisionX's favor in this regard in the amount of $43,568.46, (2) vacate the Arbitrator's Award in Defendant's favor on its § 17.46(b) DTPA claim, (3) confirm the Arbitrator's Award in DivisionX's favor on its breach of contract claim, and (4) offset any remaining awards between the parties. DivisionX has attached a proposed order hereto as Exhibit B.

Dated: June 16, 2016                 Respectfully submitted,

/s/ Gary R. Sorden
Gary R. Sorden
Texas Bar No. 24066124
gary.sorden@klemchuk.com
KLEMCHUK LLP
8150 N. Central Expressway
10th Floor
Dallas, Texas 75206
Tel: 214-367-6000
Fax: 214-367-6001

ATTORNEY FOR PLAINTIFF
DIVISIONX, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on this the 16th day of June, 2016, on the following:

By Email and Certified Mail, Return Receipt Requested

John C. Kitchens
jkitchens@johnkitchenslaw.com
KITCHENS & ASSOCIATES
505 W. 12th Street, Suite 206
Austin, Texas 78701
Office (512) 476-1176
Facsimile (512) 476-1910

ATTORNEY FOR DEFENDANT
CUTTING EDGE GAMER, LLC

/s/ Gary R. Sorden
Gary R. Sorden